**FOR PUBLICATION**

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-13873

_____

BOBBY RAY CLAYTON,

*Plaintiff-Appellee,*

*versus*

ESSENTIA INSURANCE COMPANY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:23-cv-00441-KFP

_____

Before BRASHER, KIDD, and WILSON, Circuit Judges.

BRASHER, Circuit Judge:

This appeal is about Alabama insurance law. Alabama law requires automobile liability policies to provide uninsured and underinsured motorist coverage in the amount of at least $25,000. ALA. CODE § 32-7-23; *id.* § 32-7-6(c). But Alabama law also allows

for its coverage requirements to be fulfilled by a combination of policies from one or more carriers. *Id.* § 32-7-22(j). The Alabama Supreme Court has held that uninsured motorist coverage must be portable, meaning that it follows the individual covered by the policy and is not tied to a particular vehicle.

The question in this appeal is whether policy language is void under Alabama law if it means that an automobile liability policy does not provide $25,000 in portable uninsured and underinsured motorist coverage, even if the policy requires that the insured maintain other insurance that provides that coverage *and* the insured in fact maintains that separate policy. Every state court to have addressed the question under a similar state law has answered "no." We predict that the Alabama Supreme Court would too. Accordingly, we reverse.

## I.

Bobby Ray Clayton was injured by an uninsured motorist. At the time of his injury, he owned two vehicles relevant to this dispute: a motorcycle and an antique 1965 Ford F-100. Clayton was also a named insured under two policies: a standard auto insurance policy issued by GEICO that covered his motorcycle, and an adjunctive specialty auto insurance policy issued by Essentia Insurance Company that covered his antique vehicle. Clayton paid an annual policy premium of $197.52 for his standard auto insurance policy and $117 for the adjunctive specialty policy.

At the time of the accident, Clayton was driving his motorcycle. GEICO's standard policy provided uninsured motorist coverage to the full extent required by Alabama law. *See* ALA. CODE § 32-7-6(c). And Clayton collected $25,000 under his GEICO policy. Because Clayton was not occupying or operating his antique 1965 Ford F-100 at the time of the accident, the Essentia policy did not provide additional uninsured motorist coverage. The Essentia insurance contract limits what qualifies as a "covered auto" under the policy to antique or classic vehicles that are "maintained primarily for use in car club activities, exhibitions, parades, other functions of public interest or for a private collection" and are "used only infrequently for other purposes." Doc. 24-3 at 5. The Classic Automobile Policy's section on Uninsured Motorist Coverage narrowly defines who qualifies as an "insured" under the policy to include only named and non-named insureds strictly "while using or occupying [the] covered auto" or "while not occupying a motor vehicle." Doc 24-3 at 30 (citation modified). The Liability Coverage section of the policy similarly defines "insured" as limited to incidents involving the "covered auto." Doc. 24-3 at 5–6. If a claimant does not qualify as "insured" under these definitions, the policy states that Essentia has "no duty to defend any suit or settle any claim for bodily injury or property damage" arising from accidents. Doc. 24-3 at 6 (citation modified).

There are also express exclusions in the policy for vehicles that do not qualify as a covered auto. For purposes of the Uninsured Motorists Coverage provided by the Classic Automobile Policy, the definition of "insured" is framed in exclusive terms, stating

that "insured shall NOT mean and does NOT include" any named or non-named insureds with respect to incidents arising from occupying, operating, or using vehicles that are not the "covered auto" under the specialty policy. Doc. 24-3 at 30 (citation modified). The Classic Automobile Policy defines the scope of its coverage, in part by identifying what is excluded:

> This policy provides the coverage(s) . . . but only for your ownership, maintenance and use of your covered auto. In no event will this policy:
>
> 1.  Provide coverage for any vehicles other than your covered auto; or
> 2.  Be your primary personal vehicle insurance; or
> 3.  Provide insurance for any auto or other motor vehicle, other than your covered auto, with respect to exposures or legal obligations arising out of the ownership, maintenance or use of that vehicle if it is owned by or regularly used by you, a family member or any other relative that resides with you.

Doc. 24-3 at 18–19 (citation modified).

At the same time, the Classic Automobile Policy requires that the insured have separate coverage that satisfies Alabama's legal requirements. The policy emphasizes that coverage is issued based on the insured's representation that he or she will maintain separate insurance to serve as primary coverage with respect to all vehicles except the "covered auto." Doc 24-3 at 33. The policy's Regular Use Vehicle Requirement explains that, in addition to

ownership of a regular use vehicle, the insured must maintain a separate insurance policy that "[s]atisfies all minimum state insurance requirements, including but not limited to minimum requirements for liability coverage, uninsured motorist coverage and underinsured motorist coverage . . ." while serving as the primary policy for all auto insurance requirements except those related to the "covered auto." Doc. 24-3 at 19. Essentia reserved the right to rescind, cancel, and refuse to renew the Classic Automobile Policy if the insured "do[es] not have a separate insurance policy in effect with at least . . . all of the types of coverage required by law" for the entire duration of the insurance contract. Doc. 24-3 at 19.

Despite the definitions and exclusions in the policy, Clayton filed a claim with Essentia for uninsured motorist coverage. Clayton argued that Alabama law requires Essentia to provide portable uninsured motorist coverage. After Essentia denied the claim based on the terms of the Classic Automobile Policy, Clayton sued.

Essentia moved for summary judgment against Clayton on the issue of uninsured motorist benefits. First, Essentia argued that Clayton does not qualify for uninsured motorist coverage for failure to meet the definition of "insured" under the Liability Coverage section because the damages resulted from an accident involving a vehicle excluded by the terms of the specialty policy. Second, Essentia argued that the specialty policy's limited coverage complies with the requirements of Alabama's uninsured motorist statute by operating in tandem with a separate auto insurance policy providing portable coverage. In the alternative, Essentia argued

that even if liable, the court should limit the benefits to the minimum amount required by Alabama's uninsured motorist statute.

The district court denied Essentia's motion in part with respect to the issue of liability for uninsured motorist benefits but granted the motion in part limiting Essentia's liability to the minimum amount required by Alabama's uninsured motorist statute. The district court entered judgment against Essentia for $25,000.

Essentia timely appealed.

## II.

We review *de novo* a district court's summary judgment order, applying the same legal standard used by the district court in the first instance. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Under Rule 56(a) of the Federal Rules of Civil Procedure, orders granting or denying summary judgment are reviewed in the light most favorable to the non-moving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). And questions of statutory interpretation are reviewed *de novo*. *Simone v. Sec'y of Homeland Sec.*, 156 F.4th 1212, 1216 (11th Cir. 2025). Whether a specialty auto insurance policy complies with Alabama law's portable uninsured motorist coverage requirements involves the construction of an insurance contract, which we also review *de novo*. *Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998).

### III.

Clayton argues that the uninsured motorist coverage limitation or exclusion in Essentia's policy is void as inconsistent with Alabama law and public policy. He argues that Alabama law requires each auto liability insurance policy, including adjunctive specialty policies, to independently provide portable uninsured motorist coverage.

Essentia, in response, argues that the Classic Automobile Policy's uninsured motorist coverage exclusion with respect to non-covered autos is enforceable. In support, it points out that the policy was issued based on Clayton's promise that he had other insurance meeting Alabama's legal requirements, and that Clayton did in fact have that other insurance policy.

We apply Alabama's substantive law to resolve the enforceability of the policy language. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Alabama Supreme Court has not yet addressed this issue, so "it becomes necessary to prognosticate how [this] state court would rule." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004) (citation modified); *see also Molinos Valle Del Cibao, C. por A v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011) (holding that, when deciding a question of state law while sitting in diversity, "we must predict how the highest court would decide"). We consider any pertinent sources that may inform this inquiry, "including relevant state precedents, analogous decisions, considered dicta . . . and any other reliable data tending convincingly to show how the highest court in the state would decide the

issue at hand." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005) (citation modified).

After considering these sources, we are confident the Alabama Supreme Court would hold that Essentia's policy exclusion is enforceable against an insured that has other insurance that meets the minimum requirements of Alabama law. This is so for three reasons. First, the plain text of the applicable Alabama statute says that the requirements of a "motor vehicle liability policy" may be met by multiple policies. Second, it appears that every court to have addressed this question under similar state laws has held that the requirement for portable uninsured motorist coverage may be satisfied by multiple policies. Third, Alabama's public policy is satisfied as long as the insured has the required minimum coverage, no matter which insurance company must provide it. We address each reason in turn.

*A.*

We begin with the plain text of the applicable statutes. The Alabama Supreme Court has established that, when interpreting an Alabama statute, "our inquiry begins with the language of the statute, and if the meaning of the statutory language is plain, our analysis ends there." *Lang v. Cabela's Wholesale, LLC*, 371 So. 3d 228, 234 (Ala. 2022) (citation omitted). The Alabama Supreme Court instructs us "to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the

language in the statute is ambiguous." *Ex parte Pratt*, 815 So. 2d 532, 535 (Ala. 2001).

Two provisions of the Motor Vehicle Safety-Responsibility Act govern this dispute: Alabama Code § 32-7-23(a) and Alabama Code § 32-7-22(j).

The first relevant provision, Alabama Code § 32-7-23(a), requires auto insurance carriers to provide uninsured motorist coverage to individuals insured under their policies. It states that "[n]o automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto . . . for . . . damages from owners or operators of uninsured motor vehicles." ALA. CODE § 32-7-23(a). The minimum coverage for one person must be "not less than twenty-five thousand dollars . . . in any one accident." *Id.*; *id.* § 32-7-6(c).

The Alabama Supreme Court has interpreted section 32-7-23(a) to require that uninsured motorist coverage be *portable*—that is, it applies to the insured no matter whether he or she is driving a particular vehicle. *See State Farm Mut. Auto. Ins. Co. v. Jackson*, 462 So. 2d 346 (Ala. 1984) (answering a certified question); *Jackson v. State Farm Mut. Auto. Ins. Co.*, 757 F.2d 1220 (11th Cir. 1985) (publishing the Alabama Supreme Court's answer to the certified question).

The second relevant provision, Alabama Code § 32-7-22(j), provides that "[t]he requirements for a motor vehicle liability policy may be fulfilled by the policies of one or more insurance carriers which policies together meet the requirements for a policy." Under section 32-7-22(j), the Alabama Supreme Court has upheld policy exclusions that would otherwise not be lawful. *See Royal Ins. Co. of Am. v. Thomas*, 879 So. 2d 1144, 1155 (Ala. 2003) (upholding a policy's coverage exclusion when claimant's garage customers had separate insurance sufficient to meet the statutory requirements of the Motor Vehicle Safety-Responsibility Act); *State Farm Mut. Auto. Ins. Co. v. Auto-Owners Ins. Co.*, 331 So. 2d 638, 639–41 (Ala. 1976) (upholding a policy's coverage exclusion with respect to additional insureds "where there existed other valid and collectible insurance" to the extent required by the Motor Vehicle Safety-Responsibility Act).

Giving these statutes their ordinary meaning, we believe the mandate for portable uninsured motorist coverage is a "requirement[] for a motor vehicle liability policy," Alabama Code § 32-7-22(j), that may be fulfilled through multiple policies. The phrase "motor vehicle liability policy" has the same meaning in both statutes. *See* ALA. CODE § 32-7-22(a). And the mandate in Alabama Code § 32-7-23(a) to provide uninsured motorist coverage is a "requirement" for such policies. Although section 32-7-23(a) does not expressly use the term "require" or "requirement," the provision states that no motor vehicle liability policy "shall" be issued or delivered unless the policy provides the uninsured motorist coverage

set forth in section 32-7-6(c). The key word is "shall," which imposes an imperative command. *Ex parte Prudential Ins. Co. of Am.*, 721 So. 2d 1135, 1138 (Ala. 1998) ("The word 'shall' is clear and unambiguous and is imperative and mandatory."). And the ordinary meaning of the word "requirement" is "an imperative command." *Requirement*, *Black's Law Dictionary* (12th ed. 2024). It follows that section 32-7-22(j), which allows for the combined effect of multiple policies to satisfy the "requirements for a motor vehicle liability policy," would permit multiple policies to satisfy the portable uninsured motorist coverage requirement in section 32-7-23(a).

Our understanding of these statutes is consistent with how the Alabama Supreme Court has interpreted earlier analogue statutes. In *State Farm Mutual Automobile Insurance Co. v. Auto-Owners Insurance Co.*, the Alabama Supreme Court held that "[t]he requirements of coverage may be fulfilled by policies of one or more carriers which together meet the requirements" of the Motor Vehicle Safety-Responsibility Act. 331 So. 2d at 641 (citing an earlier version, Code of Ala., Tit. 36, s 74(62)(j)). To that end, it enforced a "policy intended to extend coverage to additional insureds only when they have no other coverage available to them." *Id.*

Likewise, in *Royal Insurance*, the Alabama Supreme Court enforced a policy that narrowly defined "insured" to exclude coverage when the claimant had a separate policy in place that met the minimum coverage required by the Motor Vehicle Safety-Responsibility Act. 879 So. 2d at 1155. The important point to the Alabama

Supreme Court was that *an* insurer was providing the minimal coverage required by Alabama law, not *which* insurer provided it. *See id.* at 1152 (quoting *Auto-Owners Ins.*, 331 So. 2d at 640–41).

Essentia's policy is different from the policies in *Auto-Owners Insurance* and *Royal Insurance* in one respect. But that difference doesn't matter under the facts of this case. Unlike the policies in *Auto-Owners Insurance* and *Royal Insurance*, Essentia's policy requires that the insured purchase a separate policy that meets the minimum requirements of Alabama law and purports to deny coverage even if the insured fails to do so. We do not address whether the policy's limiting language would be enforceable in a case where the insured fails to purchase the separate policy. We emphasize instead that Clayton did, in fact, have the other insurance that Essentia's policy required and that the other insurance policy provided the minimal coverage that Alabama law requires. On these facts, we believe the policy language is enforceable under the plain text of Alabama Code § 32-7-22(j).

## B.

Our understanding of Alabama law is consistent with how other state courts have addressed the issue under comparable state laws. When answering a question of first impression related to insurance coverage, "[i]n the absence of precedents . . . we may consider the case law of other jurisdictions that have examined similar policy provisions." *Steinberg*, 393 F.3d at 1231. And it appears that every state supreme court to have addressed the question under similar state law has held that requirements for portable uninsured

24-13873                Opinion of the Court                13

motorist coverage may be satisfied by multiple policies.[1] State courts have also emphasized the uniqueness of specialty policies for antique or classic vehicles, the reasonable expectations of the parties to an insurance policy, and public policy implications.[2] We

---

[1] *See, e.g.*, *Essentia Ins. Co. v. Hughes*, 545 P.3d 494, 497 (Colo. 2024) (holding that specialty policies excluding uninsured motorist coverage are permitted when operating in tandem with a standard policy that satisfies statutory coverage requirements); *Metlife Auto & Home v. Palmer*, 839 A.2d 83, 88–89 (N.J. Super. App. Div. 2004) (upholding a specialty policy's exclusion of participation in pro rata apportionment for uninsured motorist coverage with other insurance policies because the claimant was not prevented from obtaining maximum remedial protection from the standard policy of another insurer); *see also Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 169 (3d Cir. 2014) (applying Pennsylvania law) (upholding an insurance policy as enforceable when limiting uninsured motorist coverage to incidents involving antique vehicles so that stacking otherwise consistent with state law was unavailable to the insured).

[2] *See, e.g.*, *Sanner v. Zurich-Am. Ins. Co. of Ill.*, 657 So. 2d 252, 255 (La. App. 1995) (upholding a policy's exclusion of uninsured motorist coverage on the basis that the claimant did not meet the policy's definition of "insured," defined exclusively with respect to persons occupying certain listed vehicles); *Gormbard v. Zurich Ins. Co.*, 904 A.2d 198, 209 (Conn. 2006) (declining to interpret statutory uninsured motorist coverage requirements as extending to specialty policies for antique vehicles given their distinct use in contrast with that of "ordinary, personal use vehicles"); *Turner v. St. Paul Prop. & Liab. Ins. Co.*, 676 A.2d 109, 111 (N.H. 1996) (holding that state law permits the insurer to limit uninsured motorist coverage to individuals strictly while occupying the covered vehicle and explaining that the limitation "comports with the reasonable expectations of the policyholder" per the agreement's clear and unambiguous language); *St. Paul Mercury Ins. Co. v. Corbett*, 630 A.2d 28, 32–33 (Pa. Super. Ct. 1993) (upholding specialty policy uninsured motorist coverage restrictions with respect to non-antique vehicles based on the reasonable expectations of the parties and the public policy interest in preventing increased premiums).

think the Alabama Supreme Court would find these precedents persuasive.

The most recent and most persuasive state court decision is from Colorado. There, the Colorado Supreme Court addressed the same Essentia policy at issue in this appeal. *Essentia Ins. Co. v. Hughes*, 545 P.3d 494 (Colo. 2024). The insured in *Hughes*, as here, held policies with two separate auto insurance carriers: a standard policy providing portable uninsured motorist coverage to the full extent required by state law, and Essentia's adjunctive specialty policy, which provided coverage strictly for the listed antique or classic vehicles. *Id.* at 497. Colorado's uninsured motorist statute, like Alabama's uninsured motorist statute, has been construed to mandate that insurance carriers provide portable uninsured motorist coverage. *Id.* at 496; *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 172 (Colo. 2001) (holding that coverage as required by state law applies to "*persons* and not classes of *vehicles*"). Despite this precedent, the Colorado Supreme Court reasoned that an "[uninsured motorist] limitation deserves different treatment" in the context of adjunctive specialty policies for antique or classic vehicles. *Hughes*, 545 P.3d at 496. The Colorado Supreme Court held that Essentia's adjunctive specialty policy's uninsured motorist coverage limitation "satisfie[d] both the language of [Colorado's uninsured motorist statute] and the public policy goals underpinning the statute." *Id.* at 496–97. Because the specialty policy required the insured to maintain a separate policy, with the combined effect satisfying the coverage requirements of Colorado's uninsured motorist statute, the court concluded that Essentia's uninsured motorist coverage

restriction under the specialty policy was valid and enforceable. *Id.* at 505.

We are aware of two state courts that have not permitted specialty policies for antique cars to limit uninsured motorist coverage. *See Am. S. Home Ins. Co. v. Lentini*, 286 So. 3d 157 (Fla. 2019); *St. Paul Mercury Ins. Co. v. Zastrow*, 480 N.W.2d 8 (Wis. 1992) (superseded by statute as interpreted in *Blazekovic v. City of Milwaukee*, 610 N.W.2d 467, 471 (Wis. 2000)). But these decisions are based on state laws that are materially distinguishable from the Alabama law we must apply in this case.

The Florida Supreme Court has held that specialty insurance policies must comply with state law requirements of uninsured motorist coverage. *Lentini*, 286 So. 3d at 159–60. But the insurer in *Lentini* did not argue that Florida's uninsured motorist requirements could be satisfied by the combined effect of multiple policies. There was no discussion of any Florida statute analogous to Alabama's section 32-7-22(j). Instead, the insurer argued that specialty policies should be categorically exempt from Florida's uninsured motorist statute. The court disagreed. Here, of course, unlike in *Lentini*, the question is not whether specialty insurance policies are categorically exempt from the state's uninsured motorist coverage requirements. Instead, the question is whether a specialty insurance policy may satisfy these requirements through the combined effect of multiple policies.

The Wisconsin Supreme Court's decision in *Zastrow* is even farther afield. There, the Wisconsin Supreme Court held that *every*

16                    Opinion of the Court                    24-13873

insurance policy must independently satisfy all state law require-
ments. 480 N.W.2d at 13–14. It rejected the idea that an insurer
could meet the state's requirements through a combination of pol-
icies at all. That conclusion is the opposite of Alabama Code § 32-
7-22(j), which expressly allows multiple policies to work in tandem
to satisfy statutory requirements.

We predict the Alabama Supreme Court, like the majority
of state supreme courts that have addressed the issue, would hold
that exclusions like Essentia's are enforceable. When making an
*Erie* guess in the absence of precedent, we are permitted to consider
the decisions and rationales from other jurisdictions. *Steinberg*, 393
F.3d at 1231. And the Alabama Supreme Court has looked to other
states for guidance when facing issues of first impression. *See*, *e.g.*,
*Knight v. Beverly Health Care Bay Manor Health Care Ctr.*, 820 So. 2d
92, 100 (Ala. 2001) (stating that "because this is an issue of first im-
pression, we consider the decisions of other jurisdictions"); *Ex parte
City of Guntersville*, 728 So. 2d 611, 614–15 (Ala. 1998) (noting that
the "issue is one of first impression" and then proceeding to exam-
ine what has been "considered and decided by the courts of several
other states with similar statutes").

In examining the decisions and rationales of other jurisdic-
tions upholding uninsured motorist coverage restrictions, we note
that the Alabama Supreme Court has expressed similar reasoning
in analogous contexts. We discuss a few examples below.

Addressing questions like the one before us, state courts
have considered the reasonable expectations of the parties when

construing insurance policy exclusions. *See Gormbard v. Zurich Ins. Co.*, 904 A.2d 198, 209–10 (Conn. 2006) (upholding the exclusionary clause of a specialty liability insurance policy for antique vehicles, in part because "conclud[ing] otherwise would defeat the reasonable expectations of the parties as reflected in the policy . . . and would result in a windfall recovery by the plaintiff"); *St. Paul Mercury Ins. Co. v. Corbett*, 630 A.2d 28, 30 (Pa. Sup. Ct. 1993) (upholding a specialty insurance policy's restricted uninsured motorist coverage because "an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous"). And in the broader context of interpreting insurance contracts, the Alabama Supreme Court has also given significant weight to the reasonable expectations of the insured and insurer. *See Monninger v. Grp. Ins. Serv. Ctr. Inc.*, 494 So. 2d 41, 43 (Ala. 1986) ("[U]nder Alabama law, where there is no ambiguity in [the policy's] terms . . . . [w]e cannot defeat express provisions, including exclusions, by rewriting the contract . . . nor by judicial interpretation."); *Federated Mut. Ins. Co. v. Abston Petroleum, Inc.*, 967 So. 2d 705, 714 (Ala. 2007) (holding that "expectations that contradict [an insurance policy's] clear exclusion are not objectively reasonable." (citation modified)).

Additionally, other state courts have emphasized that specialty adjunctive policies charge lower premiums commensurate with reduced risk. In the context of antique and classic vehicles, the Pennsylvania Superior Court has explained that "[t]he very limited use of antique automobiles does not subject them to the normal

exposure or danger from uninsured motorists," and that the reduced risk is reflected in lower premiums for specialty policies. *Corbett*, 630 A.2d at 32–33. The Alabama Supreme Court has also recognized the relationship between an insurer's assumed risk and the corresponding premium charged to compensate the insurer for increased exposure to liability. *See Holt v. State Farm Mut. Auto. Ins. Co.*, 507 So. 2d 388, 393 (Ala. 1986) (declining to strike down a "nonowned" policy exclusion provision because doing so would "thwart the [policy] exclusion's purpose of prohibiting multiple coverage under a single policy of insurance without an increase of premium charges to compensate the insurer for the increased risk").

Because of the relationship between risks and premiums, enforcing limitations on uninsured motorist coverage for adjunctive specialty policies makes sense when the insured has portable coverage from another policy. Doing so aligns well with public policy goals by keeping insurance premiums for antique and classic vehicles affordable.

## C.

Finally, to declare Essentia's policy language void, we would need to conclude that it violated Alabama public policy. But, in this case, Alabama's public policy goals are satisfied by the minimum coverage provided to the insured by the standard auto insurance policy.

Policy language that would leave the injured without the uninsured motorist coverage required by law is void as contrary to

Alabama public policy. *See Jackson*, 462 So. 2d at 346. "Uninsured motorist coverage is intended to provide financial recompense to innocent persons who are injured and to dependents of those who are killed because of the wrongful conduct of uninsured motorists." *Gulf Am. Fire & Cas. Co. v. Gowan*, 218 So. 2d 688, 691 (Ala. 1969). And as set forth in Alabama Code section 32-7-6(c), the legislature determined the appropriate floor for compensation in such cases to be $25,000 per insured person in the event of bodily injury or property damage. "[I]f a person is insured under the liability coverage provision of a motor vehicle insurance policy and uninsured motorist coverage is not rejected, the uninsured motorist coverage dictated by § 32-7-23 cannot be excluded from the policy as to such an insured person." *Jackson*, 462 So. 2d at 350 (citation omitted).

But Clayton has not been deprived of the uninsured motorist benefits that he is entitled to under Alabama law. Under GEICO's standard insurance policy, Clayton collected $25,000 of uninsured motorist benefits offered by GEICO's regular use policy, the full amount required by Alabama's uninsured motorist statute. As the Alabama Supreme Court has explained, "[t]he law is only concerned that required coverage is provided, not by what or which carrier." *Auto-Owners Ins. Co.*, 331 So. 2d at 641. The specialty policy issued by Essentia does not deny uninsured motorist coverage in this case—it simply allocates the required coverage to the insured's standard policy.

*    *    *

In short, because Essentia's adjunctive specialty auto insurance policy worked in tandem with a standard auto insurance policy to provide Clayton fully portable uninsured motorist coverage, we believe the Alabama Supreme Court would enforce the policy limitation on uninsured motorist coverage. Alabama law expressly allows insurers to fulfill the legal requirements of the Motor Vehicle Safety-Responsibility Act through multiple policies. And we think the Alabama Supreme Court is likely to follow other state courts in holding that the uninsured motorist coverage restriction in this policy is enforceable, at least when another policy does in fact provide the minimum coverage required under Alabama law.

## IV.

The district court is **REVERSED**, and this matter is **REMANDED** for proceedings consistent with this opinion.